## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

ABRAHAM M.,

Petitioner,

v.

MARKWAYNE MULLIN, *Secretary, Department of Homeland Security*; TODD BLANCHE, *Acting Attorney General*; DAVID VENTURELLA,[1] *Acting Director, Immigration and Customs Enforcement*; and DAVID EASTERWOOD, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

Respondents.

Case No. 26-cv-2609 (LMP/DJF)

### ORDER DENYING
### HABEAS PETITION

Daniel P. Suitor, **Daniel P. Suitor, PLLC, Minneapolis, MN**, for Petitioner.

Pedro del Valle, IV, **United States Attorney's Office, Minneapolis, MN**, for Respondents.

Petitioner Abraham M.[2] filed a petition for a writ of habeas corpus asserting that Respondents (the "Government") have unlawfully detained him pending the execution of his final order of removal. *See generally* ECF No. 1. For the reasons below, Abraham's petition is denied.

---

[1]    David Venturella is substituted for Todd M. Lyons pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2]    The Court uses the petitioner's first name throughout this order to comport with this District's practice of using only the first name and last initial of any nongovernmental parties in immigration cases. No disrespect is intended in doing so.

## BACKGROUND

Abraham is a native and citizen of Uganda.  ECF No. 1 ¶ 7.  He entered the United States in 1979 at the age of two and became a lawful permanent resident after he was granted asylum.  *Id.* ¶ 13; ECF No. 6 ¶¶ 6–7.

In 1998, Abraham was convicted of both theft and providing a false name to police.  ECF No. 6-1 at 3.  In 2000 and again in 2001, Abraham was convicted of providing a false name to police.  *Id.*  In November 2001, the Government served Abraham with a Notice to Appear and placed him in removal proceedings.  ECF No. 6-1.  The Government charged him with removability under 8 U.S.C. § 1227(a)(2)(A)(ii) for committing "two crimes involving moral turpitude."  *Id.* at 1.  In March 2006, an immigration judge ordered Abraham removed to Uganda.  ECF No. 1 ¶ 15; ECF No. 6-2.

On August 21, 2007, the Government released Abraham on an Order of Supervision ("OSUP").  ECF No. 6-3.  The OSUP required, among other things, that Abraham not commit any crimes.  ECF No. 6-3 at 1.  Since he was released on the OSUP, Abraham has been convicted of several driving-related offenses, including convictions for driving under the influence, driving without a valid license, and driving without proper documentation, as well as disorderly conduct, criminal sexual conduct, and failing to register as a predatory offender.  ECF No. 1 ¶ 14; ECF No. 6-5 at 3.  Relevant here, on May 8, 2026, Abraham was arrested for operating an unregistered vehicle and operating a vehicle without insurance.  ECF No. 6 ¶ 21.  On May 9, 2026, Immigration and Customs Enforcement ("ICE") issued an I-205 warrant for Abraham's removal and lodged an immigration detainer along with the I-205 warrant at the Wright County Jail.  ECF No. 6 ¶ 22; ECF

No. 6-4. On May 11, 2026, Abraham had an initial appearance before a judge in Wright County and was ordered released on his own recognizance. ECF No. 1 ¶ 20. As he was being released from the Wright County Jail, ICE agents apprehended Abraham and served him with an I-200 warrant for his arrest. ECF No. 6 ¶ 23; ECF No. 6-6. Abraham represents that the ICE agents arrested him at approximately 12:30 p.m. ECF No. 1 ¶ 20.

Once in immigration custody, ICE served Abraham a Notice of Revocation (the "Notice") of the OSUP, stating that ICE was revoking his OSUP "pursuant to 8 C.F.R. § 241.13(i)" because: (1) Abraham "failed to report to ICE officials on March 31, 2020," (2) Abraham had "been convicted of DWI and criminal damage to property following [his] last release from ICE custody," and (3) "ICE is seeking a travel document to effect [Abraham's] expeditious removal to Uganda." ECF No. 6-7 at 1–2. The Notice was signed on May 11, 2026, at 2:19 p.m. *Id*. at 2. Also on May 11, 2026, ICE conducted an informal interview with Abraham, so that he could respond to the reasons for revocation of the OSUP. *Id.* at 3. Abraham provided no statement. *Id.*

Abraham filed a petition for a writ of habeas corpus on May 13, 2026, alleging that his detention violates federal law, the Fourth and Fifth Amendments to the United States Constitution, and ICE's own regulations. *See* ECF No. 1 ¶¶ 76–104. He seeks a declaration that his detention is unlawful and immediate release from ICE custody. *Id.* at 29–30.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,' the authority to hear applications for habeas corpus by any person who claims to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'"

3

*Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*, 533 U.S. 289, 305 (2001).

## I.    Warrantless Arrest

Abraham first argues that he was not arrested on a valid warrant. The Court disagrees. "As a general rule, it is not a crime for a removable [noncitizen] to remain present in the United States," so police may not arrest "someone based on nothing more than possible removability." *Arizona v. United States*, 567 U.S. 387, 407 (2012).[3] Instead, the "federal statutory structure instructs when it is appropriate to arrest a [noncitizen] during the removal process." *Id.* Generally, federal immigration officers must have an administrative warrant to arrest a noncitizen ordered removed. *Id.* at 408. But if "no federal warrant has been issued, [ICE] officers have more limited authority," *id.*, and ICE may arrest a noncitizen only when an officer has "reason to believe" (1) that a noncitizen is in violation of the immigration laws; and (2) "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2).

Here, ICE obtained two different warrants that purportedly justified Abraham's arrest: an I-200 and an I-205. ECF Nos. 6-4, 6-6. The difference between the two warrants is meaningful. An I-200 warrant is used by ICE to arrest a noncitizen "[a]t the time of issuance of the notice to appear, or at any time thereafter and up to the time removal

---

[3]    The Court adopts the term "noncitizen" as "equivalent to the statutory term 'alien.'" *Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

proceedings are completed." 8 C.F.R. § 236.1(b). After removal proceedings are completed and a noncitizen receives a final removal order, ICE regulations contemplate the use of a second arrest warrant, an I-205 "warrant of removal." *Id.* §§ 241.2(a), 241.3(a). The I-205, and the I-205 alone, justifies the arrest of an individual after removal proceedings are complete. *Inti C.-L. v. Blanche*, No. 26-cv-2777 (PJS/SGE), ECF No. 10 at 4 (D. Minn. June 9, 2026). Here, ICE obtained both warrants prior to Abraham's arrest on May 11, 2026. The I-205 was issued on May 9, 2026, ECF No. 6-4 at 6, and the I-200 was issued on May 11, 2026, ECF No. 6-6. It would appear, then, that ICE followed its regulations, and Abraham was arrested pursuant to a valid I-205 warrant.

Abraham makes no claim that the I-205 warrant is facially invalid. He argues that he was not arrested on the I-205 warrant, but instead arrested on the I-200 warrant, because when ICE officers took him into custody at the Wright County Jail they served him with the I-200 warrant. ECF No. 7 at 3 (arguing that where "the proper warrant was never served on Petitioner, his arrest did not occur under a valid warrant and Petitioner must be released"). But this Court has previously explained that an I-200 administrative warrant need not be *served* on the noncitizen to be valid and effective. *See Sinan O. v. Noem*, No. 26-cv-386 (LMP/JFD), ECF No. 14 at 3–6 (D. Minn. Feb. 3, 2026).[4] Abraham cites no statute, regulation, or case law establishing a different rule for I-205 warrants. That the

---

[4] To be sure, this Court has held that a warrant must be issued prior to the noncitizen's arrest. *See Joaquin Q. L. v. Bondi*, No. 26-cv-233 (LMP/DTS), ECF No. 8 at 4–5. But Abraham concedes that the I-205 warrant was issued prior to his arrest here. ECF No. 7 at 6.

I-205 warrant issued before Abraham's arrest is all that is necessary.[5] As a result, the Court

denies Abraham's warrantless-arrest claims.

## II.     Revocation of the OSUP

Abraham next argues that the Government did not follow its own regulations when

it revoked his OSUP or that the manner in which it revoked his OSUP violated his due

process rights.  ECF No. 7 at 16–28.

The parties agree that 8 U.S.C. § 1231 and its implementing regulations govern

Abraham's detention because he is subject to a final order of removal.  *See* ECF No. 5 at 7–

9; ECF No. 7 at 2–3; *see also* ECF No. 1 ¶ 71.  The core dispute, then, is whether ICE

followed those regulations in revoking the OSUP and detaining Abraham.     *See*

---

[5]     Abraham cites three recent cases from this District for the proposition that a noncitizen "must have been served an arrest warrant prior to detainment."  ECF No. 7 at 6, 10–11 (citing *Marlon S. T. L. v. Bondi*, No. 26-cv-665 (DWF/LIB), 2026 WL 251975, at *2 (D. Minn. Jan. 30, 2026); *Ruben D. A. G. v. Blanche*, No. 26-cv-2041 (MJD/DJF), ECF No. 9 at 4–5 (D. Minn. Apr. 20, 2026); and *Hector J. A. S. v. Shea*, No. 26-cv-2242 (JRT/DLM), ECF No. 10 at 5–6 (D. Minn. May 6, 2025)).  The Court does not read *Marlon S. T. L.* and *Ruben D. A. G.* to stand for such a broad proposition.  The issue in both those cases was that the warrant had not been *issued* before arrest or *issued* at all. *Marlon S. T. L.*, 2026 WL 251975, at *2 ("There is no evidence that Respondents had a warrant to arrest Petitioner."); *Ruben D. A. G.*, No. 26-cv-2041, ECF No. 9 at 5 ("Respondents do not assert that Petitioner was arrested pursuant to a warrant.").  And to the extent that *Hector J. A. S.* does stand for that proposition, the Court respectfully disagrees.  *See Sinan O.*, No. 26-cv-386, ECF No. 14 at 3–6.  Moreover, that ICE can, and has, served warrants at or before the time of arrest, ECF No. 7 at 9 n.4, does not mean that it is required to do so.  Indeed, such a rule does not exist in the analogous criminal process. *See* Fed. R. Crim. P. 4(c)(3) (emphasis added) ("Upon arrest, an officer possessing the original or a duplicate original warrant must show it to the defendant.  *If the officer does not possess the warrant*, the officer must inform the defendant of the warrant's existence and of the offense charged and, at the defendant's request, must show the original or a duplicate original warrant to the defendant as soon as possible.").

*Saengnakhone S. v. Noem*, No. 25-cv-4775 (ECT/LIB), 2026 WL 34132, at \*3 (D. Minn. Jan. 6, 2026) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954)) ("Agencies must follow their own regulations.").

An OSUP may be revoked, and the noncitizen may be re-detained, in two circumstances: (1) if the noncitizen violates the OSUP's conditions; or (2) if circumstances change such that ICE determines the noncitizen's removal is significantly likely in the reasonably foreseeable future.  8 C.F.R. § 241.13(i)(1)–(2).   In either case—an OSUP violation or changed circumstances—ICE must notify the noncitizen "[u]pon revocation" of the "reasons for revocation of his or her release" and "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3).  As part of that informal interview, the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future" or that he or she has not violated the OSUP's conditions. *Id.*

Here, ICE revoked Abraham's OSUP both because he had violated a condition of his release (specifically, he had been convicted of criminal conduct) *and* because ICE had determined that there is a significant likelihood of his removal in the reasonably foreseeable future.  ECF No. 6-7 at 1–2.  Abraham argues that the Government has failed to demonstrate that his removal is likely, ECF No. 7 at 21–22, but acknowledges that he has committed criminal offenses since his release and that those offenses provide "a valid reason for revocation," *id.* at 22.  One basis will do.  Abraham nonetheless argues that, even

7

if ICE had a valid reason for revocation, it failed to follow its procedures when revoking his OSUP because the Notice was not issued and served before his arrest. *Id.* at 17–21. The Court disagrees.

First, the Notice was signed, and Abraham "received notice" of the revocation, on "the same date as his arrest," which is appropriate under 8 C.F.R. § 241.13(i)(3). *Somvang P. v. Sec'y, Dep't of Homeland Sec.*, No. 26-cv-37 (PJS/EMB), 2026 WL 788853, at \*2 (D. Minn. Mar. 20, 2026); *see* ECF No. 6-7 at 1–2. Even so, Abraham argues that because the revocation was not signed and served until *after* he was returned to ICE custody (two hours later, he contends), ICE failed to follow its procedures for revoking the OSUP. ECF No. 7 at 25. But Abraham points to nothing in the regulations themselves that require either issuance or service of the notice of revocation to occur before arrest. Instead, the regulations only state that "[u]pon revocation," ICE must notify the noncitizen of the reasons for the revocation. 8 C.F.R. § 241.13(i)(3). True, Abraham points to cases from this District that suggest that a notice of revocation must be served "prior to" a noncitizen's arrest. *See* ECF No. 7 at 19–20 (collecting cases). But those courts have also suggested that a notice of revocation may be properly served "at the time of [the noncitizen's] arrest." *Claudio A. A. v. Bondi*, No. 26-cv-742 (KMM/LIB), 2026 WL 468232, at \*7 (D. Minn, Feb. 12, 2026). Here, the Court concludes that ICE "complied with § 241.13(i)(3)'s requirement that notice be given 'upon revocation.'" *Somvang P.*, 2026 WL 788853, at \*2.

Finally, Abraham argues that although he technically received an "informal interview" as required by regulation, *see* 8 C.F.R. § 241.13(i)(3), he was deprived of a meaningful "informal interview" because his interview occurred on the same day he was

transferred from state custody to ICE custody.  ECF No. 7 at 23–25.  The Court, again, disagrees.  ICE is required under 8 C.F.R. § 241.13(i)(3) to "conduct an initial informal interview promptly . . . to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification."  That it did.  ECF No. 6 ¶ 25.  But Abraham says that his interview was meaningless because it happened too fast, and he had no opportunity to gather evidence to rebut the Government's reasons for revoking his OSUP.  ECF No. 7 at 24.  But the informal interview is just that: informal.  8 C.F.R. § 241.13(i)(3).

At bottom, the regulations contemplate only that a noncitizen be afforded "an opportunity to respond to the reasons for revocation stated in the notification," and provide that the noncitizen "may submit any evidence or information that he or she believes shows . . . that he or she has not violated" the OSUP.  *Id.*  Abraham was given that opportunity, but he declined to provide any such information.  ECF No. 6-7 at 3.  To the extent that Abraham argues that he needed more time to provide evidence, he will be provided with that opportunity.  *See* 8 C.F.R. § 241.4(l)(3); *see id.* §§ 241.13(a), (i)(3) (explaining that noncitizens who have their OSUP revoked under 8 C.F.R. § 241.13(i)(3) receive the "custody review" process provided for in 8 C.F.R. § 241.4).  Given that additional process, the Court disagrees that Abraham's initial interview did not meet the requirements of 8 C.F.R. § 241.13(i)(3) or somehow violated his due process rights.  *See Emilio S. R. G. v. Mullin*, 26-cv-2189 (KMM/DLM), ECF No. 14 at 4–5 (D. Minn. June 24, 2026) (rejecting a similar argument because the Government "complied with 8 C.F.R. § 241.13(i) by providing [petitioner] with proper notice of his revocation and an opportunity to contest it").

9

For these reasons, the Court concludes that the Government has complied with the regulations governing Abraham's re-detention.  Accordingly, Abraham's petition is denied.

## CONCLUSION

Based on the foregoing, and on all the files, records, and proceedings in this matter,

**IT IS HEREBY ORDERED** that:

1. Abraham's Petition for a Writ of Habeas Corpus (ECF No. 1) is **DENIED**; and

2. This matter is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 29, 2026                                  *s/Laura M. Provinzino*
                                                      Laura M. Provinzino
                                                      United States District Judge